CONCURRING IN PART AND DISSENTING IN PART
GRIFFIN, Circuit Judge,
concurring in part and dissenting in part.
I agree that the district court erred in granting summary judgment in Corme-tech’s favor on the breach of warranty claim, but disagree regarding the indemnity claim. I therefore respectfully concur in part and dissent in part.
In finding a genuine dispute of material fact regarding the indemnification claim, the lead opinion relies upon unsubstantiated and inadmissible opinions of three B&W employees. I disagree that we should elevate their testimony to something above pure speculation. All three made clear that while they believed the catalyst’s formulation was incorrect, they had no foundation for this belief.
In particular, Mark Low concluded “that the formulation probably wasn’t optimum for the conditions” due to the catalyst’s “rapid deactivation.” However, when asked to provide the basis for his conclusion, he was unable to do so — he admitted he did not “have any idea what the problem [was] with the formulation” and was not “aware of anybody within B&W who has any evidence that there was a problem with the formulation.” When directly confronted with why he thought “the catalyst was [not] fit for the conditions that it was actually designed for,” Low offered this equivocal non-answer:
Yeah, I think that, you know, no direct evidence at this point in time, but I believe that things were — you know, I don’t know. I don’t have any direct evidence I guess is the right answer....
To the extent Low assigned a “percentage of responsibility” for the alleged design defect, he qualified his speculative opinion as follows: “I don’t have any fact to tell you or specific analysis that could be done to say this is exactly the percentage of why the catalyst failed.” Finally, Low conceded he became focused on the formulation after Cormetech’s larger, replacement catalyst also failed.
John Monacelli’s testimony was likewise conclusory and without a factual basis. Monacelli’s opinion was that the catalyst’s design was defective because it failed. Beyond that, he admitted he had no knowledge of the catalyst’s formulation; rather, “[t]hat’s Cormetech’s area of expertise and we do not know that.” Monacelli later reiterated on his lack of knowledge and expertise:
Q: Was there something that you now believe, looking back, that Cormetech should have done differently with respect to this project?
*766 A. I have an opinion, but I don’t know if it’s factual, but — and it’s because they’re the experts, I can’t answer for them, but was the formulation of this catalyst done correctly, and I have no insight into that and it can even be in hindsight was it done correctly.
It is true that Cormetech did not anticipate high levels of phosphorous gas at the La Cygne plant, but as Monacelli testified, neither did B&W. Jason Chitwood’s testimony confirms this, faulting the catalyst’s design for failing to anticipate high phosphorous levels, but admitting B&W did not anticipate such high levels either. When asked to explain this discrepancy, Chit-wood deferred to Cormetech’s expertise in the area.
In short, none of their opinions are supported by reference to facts and all are informed by hindsight. That is, their opinions about Cormetech’s failure to properly account for phosphorous poisoning were informed by knowledge that Cormetech’s even larger replacement catalyst had also failed. I therefore agree with the district court’s conclusion that this hindsight-informed, speculative testimony is insufficient to create a genuine dispute of material fact for trial. See Bell v. Ohio State Univ., 351 F.3d 240, 253 (6th Cir. 2003).
Second, the lead opinion “buttresses” this speculative testimony with the opinion of B&W’s expert, Dr. Stephen Niksa. But the lead opinion fails to put this in context. In his deposition, Dr. Niksa characterized the experience of “watching the replacement catalyst deactivate at the same rate” as the first as “extraordinary.” This experience, he said, made it clear that none of the other contributing factors that had been considered “would make a[] difference.” When asked specifically what that experience should have taught Cormetech about how it should have designed the catalyst differently, Niksa responded:
By throwing up a flag saying that given the potential for phosphorous deactivation in this application, no catalyst is going to work. That’s what they should have done. That’s exactly what they should have done.
In other words, Niksa, like the B&W employees, was unable to identify a defect in the catalyst that was the product of any omission or oversight by Cormetech until after the “extraordinary” event of the replacement catalyst failure. Then, it became apparent that the prbblem was not in the catalyst, but in the conditions of the La Cygne plant. And indeed, the problem seems to have been resolved; not by any change in the catalyst design or formulation, but by replacement of the cyclone burners, as freely acknowledged by Niksa in his report: “P[hosphorous] poisoning could only be alleviated by replacing the cyclone burners.”
Cormetech formulated the catalyst in 2006, but the evidence relied upon by the lead opinion to find a factual dispute in the form of phosphorous problems comes several years later. Before the replacement catalyst failure, B&W’s position was that the original catalyst failure was not attributable to any fault of Cormetech, but rather to various contributing factors related to KCP&L’s operation of the SCR. Corme-tech’s Performance Test Report in 2008 follows, giving no hint of suspicion that phosphorous poisoning resulting from poor combustion was a cause of the catalyst failure — even as Cormetech prepared to supply a replacement catalyst. Viewing B&W’s evidence in this context, I disagree with the lead opinion that B&W put forth sufficient evidence of a genuine dispute of material fact as to whether Cormetech’s failure to anticipate the risk of phosphorous poisoning when it designed the catalyst was a cognizable “omission” warranting indemnification under the contract.
*767 Accordingly, I would affirm the district court’s grant of summary judgment in Cormetech’s favor on the indemnity claim. I join the lead opinion in all other respects.